**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 12-cv-02978-REB

MARIA L. GALLEGOS,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

**ORDER REVERSING DISABILITY**
**DECISION AND REMANDING TO COMMISSIONER**

---

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed November 13, 2012,

seeking review of the Commissioner's decision denying plaintiff's claim for disability

insurance benefits and supplemental security income benefits under Titles II and XVI of

the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully

briefed, obviating the need for oral argument.  I reverse and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of hepatitis C, complete

lacerations of the fourth and fifth flexor tendons of the right dominant hand, post-

---

[1]  "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

traumatic stress disorder, headaches, obesity, depression, bipolar disorder, and a history of methamphetamine dependence.  After her applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on May 19, 2011.  At the time of the hearing, plaintiff was 38 years old.  She has an eleventh grade education and past work experience as a fast food worker and manager, retail store manager, and waitress.  She has not engaged in substantial gainful activity since January 1, 2009, her alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform light work with postural restrictions and that required no more than the ability to understand, remember, and carry out only simple instructions. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that she could perform.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous

work and any other "substantial gainful work which exists in the national economy." 42

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).   However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial

gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d

335, 338 (10th Cir. 1995).

    The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled:

> 1.    The ALJ must first ascertain whether the claimant is
>        engaged in substantial gainful activity. A claimant who is
>        working is not disabled regardless of the medical findings.
>
> 2.    The ALJ  must then determine whether the claimed
>        impairment is "severe."  A "severe impairment" must
>        significantly limit the claimant's physical or mental ability to
>        do basic work activities.
>
> 3.    The ALJ must then determine if the impairment meets or
>        equals in severity certain impairments described in Appendix
>        1 of the regulations.
>
> 4.    If the claimant's impairment does not meet or equal a listed
>        impairment, the ALJ must determine whether the claimant
>        can perform his past work despite any limitations.
>
> 5.    If the claimant does not have the residual functional capacity
>        to perform her past work, the ALJ must decide whether the
>        claimant can perform any other gainful and substantial work

in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f), 416.920(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).

4

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

Although plaintiff presents five separate assignments of error on appeal, the thrust of her arguments is that the ALJ improperly weighed the various opinions of record regarding plaintiff's physical and mental impairments.  I agree, at least in part, and therefore reverse.

Plaintiff, who is right-handed, suffered a knife laceration over the fourth and fifth fingers of that hand in 2005, completely severing the pinky finger and partially severing the ring finger.  The fingers were reattached, but the ligaments were permanently severed.  (Tr. 518.)  Although plaintiff has normal sensation in these fingers, they do not flex and are non-functional.  (Tr. 329, 334, 518.)  Consultative examiner Dr. William Qutub suggested that plaintiff could not carry anything with the right hand and would have "[f]requent and permanent manipulative limitations . . . with grasping, fingering, and handling in her right hand[.]" (Tr. 334.)  The ALJ gave this opinion "little weight" on the ground that Dr. Qutub had imposed only "frequent limitations with respect to grasping, fingering, and handling" whereas the medical record supported a greater level of restriction.  (Tr. 28.)

In this, it appears that the ALJ misread the record, believing that Dr. Qutub had suggested that plaintiff could "frequently" grasp, finger, and handle with her right hand when in fact his opinion supports a conclusion that she is capable of much less.  ***See Social Security Ruling 83-10***, 1983 WL 31251 at *5-*6 (SSA 1983) ("frequently" under

5

Commissioner's regulations means "occurring from one-third to two-thirds of the time").

Dr. Qutub's statement that plaintiff would have "frequent and permanent limitation" on

the manipulative abilities of the right hand cannot be thought to imply a frequent

capacity to use that hand, as the ALJ apparently concluded.  Indeed, Dr. Qutub's

assessment that plaintiff could not carry at all with the right hand would seem to support

a greater degree of restriction on her manipulative capacity.  At the very least, the

record in this regard is ambiguous, in which case the ALJ was obligated to recontact Dr.

Qutub for further clarification.  *See* 20 C.F.R. § 404.1512(e); **Social Security Ruling**

**96-5p**,1996 WL 374183 at *6 (SSA July 2, 1996).

This error was not harmless.  The ALJ gave "great weight" to the opinion of the

state agency physician, Dr. Karl Chambers, who reviewed the medical evidence,

including Dr. Qutub's opinion, and suggested that plaintiff was capable of light work with

frequent handling and occasional fingering with the right hand.  The ALJ found this

opinion consistent with the medical evidence, "which reveals conservative treatment for

only minimal physical impairments."  The ALJ further found that Dr. Chambers had the

benefit of reviewing subsequently submitted evidence that was not available to Dr.

Qutub.  (Tr. 28.)

"In appropriate circumstances, opinions from State agency medical and

psychological consultants and other program physicians and psychologists may be

entitled to greater weight than the opinions of treating or examining sources."  **Social**

**Security Ruling** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996).  Nevertheless, the

reasons cited by the ALJ as justifying her reliance on Dr. Chambers's opinion do not

6

bear scrutiny.  First, it is not at all apparent that *any* treatment – conservative or otherwise – would have been efficacious in improving the condition of plaintiff's totally lacerated fourth and fifth fingers.  Moreover, classifying the inability to use the fourth and fifth fingers of one's dominant hand hardly constitutes a "minimal" impairment. Indeed, such a finding is arguably at odds with the ALJ's conclusion that this impairment was "severe" at step 2 of the sequential evaluation.  *See* **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985).

As for Dr. Chambers's supposed ability to review of more complete record, this justification is utterly unsubstantiated in any particular.  It is not apparent at all from the ALJ's decision what additional evidence Dr. Chambers reviewed or how it may have bolstered his assessment of plaintiff's functional capacity.  Indeed, it is not even a fair comparison, since Dr. Qutub did not review records at all, but instead based his assessment on his actual examination of plaintiff, which generally is a consideration entitling such an opinion to greater weight than that of a non-examining source such as Dr. Chambers.  *See* 20 C.F.R. § 404.1527(e).  *See also **Allison v. Heckler***, 711 F.2d 145, 147-48 (10th Cir. 1983).

For these reasons, I find and conclude that the ALJ's determination of plaintiff's physical residual functional capacity is not supported by substantial evidence and must be reversed.

Plaintiff also alleges that the ALJ erred in her assessment of plaintiff's mental residual functional capacity.  I agree that many of the reasons given by the ALJ in support of her decision to assign little weight to the opinions of Dr. Jose Vega and

plaintiff's licensed clinical social worker, Elizabeth Richards, are either invalid or do not

bear up under scrutiny.[2]   Nevertheless, the ALJ did conclude that Dr. McKinney's

opinion was more consistent with the medical evidence of record, which she found

supported, "at most, moderately severe mental impairments." (Tr. 28.)  Although

plaintiff claims this statement is a conclusion in the guise of a finding, ***see Hardman v.***

***Barnhart***, 362 F.3d 676, 679 (10th Cir. 2004), the record shows otherwise.  By plaintiff's

own admission, her mental impairments are well-controlled on medication, at least when

she takes it appropriately.  (Tr. 201, 513.)  ***See Pacheco v. Sullivan***, 931 F.2d 695, 698

(10th Cir. 1991).  Moreover, Dr. Vega's observation that plaintiff "does not tolerate being

_____

[2]   For example, the ALJ apparently failed to appreciate the irony of her observation that Dr. Vega
was hired by plaintiff's attorney in "an effort to generate evidence for the current appeal" and "was
presumably paid for [his] report" (Tr. 29), in light of her reliance on a report of a consultative examiner who
was hired and paid for by the Commissioner in an attempt to generate evidence for plaintiff's
administrative appeal.  Similarly, with respect to Ms. Richards, the ALJ noted that "the possibility always
exists that a treating source may express an opinion in an effort to assist a patient with whom he or she
sympathizes for one reason or another."  (Tr. 30.)  Nothing other than rank speculation supports such an
inference, and it is not a proper basis on which to discredit a treating source opinion.  ***See McGoffin v.***
***Barnhart***, 288 F.3d 1248, 1253 (10th Cir. 2002).

        Similarly, the ALJ's allusion to the fact that Ms. Richards had not been treating plaintiff for very
long at the time she rendered her opinion glosses over the reality that Dr. McKinney, on whom the ALJ
placed great reliance, had no treatment relationship with plaintiff at all.  It is simply not appropriate to
discredit evidence on grounds that apply with equal force to evidence on which the ALJ does rely.  ***See***
***Teter v. Heckler***, 775 F.2d 1104, 1106 (10th Cir. 1985).  Relatedly, the observation that Dr. McKinney's
report was based on a thorough examination provides no basis for assigning her report more weight than
that of either Dr. Vega or Ms. Richards.  Nothing in the record suggests that Dr. Vega's examination was
any less thorough than Dr. McKinney's, and Ms. Richards actually treated plaintiff.

        Likewise, the ALJ's observation that the opinions of Dr. Vega and Ms. Richards were inconsistent
with those of Dr. McKinney is no reason at all.  The fact that various source opinions may be inconsistent
with one another gives rise to the need to weigh those opinions against one another in light of the
evidence.  It provides no basis in itself for assigning more or less weight to any one or more of those
opinions.

        Finally, the fact that Ms. Richards was not an acceptable medical source does not allow the ALJ to
reject her opinions wholesale.  ***See Frantz v. Astrue***, 509 F.3d 1299, 1301-02 (10th Cir. 2007) (citing
**Social Security Ruling 06-3p**, 2006 WL 2329939 at *3-6 (SSA Aug. 9, 2006)) (noting that opinions from
medical sources who are not technically acceptable medical sources "are important and should be
evaluated on key issues such as impairment severity and functional effects" and that such source opinions
may, in appropriate circumstances, outweigh those of acceptable medical sources).

around people, avoids crowds, and tends to isolate herself from others" (Tr. 522) is adequately accounted for by the ALJ's provision in her residual functional capacity assessment that plaintiff have no interaction with the general public and only occasional interaction with co-workers (Tr. 20).[3] I therefore perceive no reversible error in this regard.

However, I do agree with plaintiff that in assessing her mental residual functional capacity, the ALJ seems to have improperly ignored Dr. McKinney's assessment that plaintiff's "pace is slow." (*See* Tr. 343.) The ALJ did conclude that plaintiff had moderate restrictions in concentration, persistence, and pace. (Tr. 19.)[4] Nevertheless, it is not clear to this court how those findings are accounted for in the residual functional capacity assessment. *See Apodaca v. Colvin*, 2013 WL 1876758 at *4 (D. Colo. May 3, 2013) ("The inquiry undertaken at steps 4 and 5 is not divorced from the analysis at prior steps, but rather builds and expands on it, creating an even more precise and detailed picture of the claimant's specific limitations."). Although an ALJ is not required to adopt every restriction suggested by a medical or other source *in toto*, *see Vendetti v. Astrue*, 2010 WL 3516652 at *4 (D. Colo. Aug. 31, 2010), she still must explain why certain limitations were not adopted, **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996). Nor was this error clearly harmless. *See Apodaca*, 2013 WL at *4 ("[S]imply limiting a claimant to . . . work requiring no more

---

[3] Although I do not condone the ALJ's discrediting of these opinions because they allegedly failed to translate plaintiff's impairments into concrete functional limitations, I find nothing in the record to contradict the ALJ's conclusion that the extreme limitations noted by Dr. Vega and Ms. Richards are not supported by the medical and other evidence of record.

[4] This finding actually was more restrictive than that suggested by Dr. Chambers, who opined that plaintiff had only mild restriction in this sector. (Tr. 84.)

than the ability to understand, remember, and carry out simple instructions (as was done here), does not adequately account for a finding that the same claimant has at least moderate impairments in the ability to maintain concentration, persistence, and pace."). Accordingly, this error requires that the disability determination be reversed.

Finally, although the ALJ queried the vocational expert regarding jobs which required the ability to follow simple *instructions*, she ultimately found that plaintiff could perform the alternative jobs identified by the vocational expert because her residual functional capacity included the ability to complete simple *tasks*. (*Cf.* Tr. 68-71, *with* Tr. 20.) Although the Commissioner argues that there is no meaningful distinction between these two concepts, the court is not so sanguine, especially as there is nothing in the record to support a conclusion that the ALJ made this same equation. By failing to accurately describe, quantify, and assess these mental limitations, the ALJ's findings at step 4 are suspect, and thus fail to sustain the Commissioner's burden of proof at step 5. Those determinations therefore must be reversed.[5]

### IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**; and

2. That this case is **REMANDED** to the ALJ, who is directed to

    a.    Reevaluate and reweigh the opinions of Drs. Qutub and Chambers

---

[5] Although plaintiff asks me to direct an award of benefits in her favor, I find it would not be proper to exercise my discretion in that regard here. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

regarding plaintiff's physical impairments and capacity in light of the
discussion herein, providing legitimate reasons specifically tied to
the evidence of record for the weight afforded to each source's
opinion;

b.    Reevaluate plaintiff's mental residual functional capacity,
accounting particularly for Dr. McKinney's findings regarding
plaintiff's pace;

c.    Recontact any treating, examining, or reviewing sources for further
clarification of their findings, seek the testimony of additional
medical or vocational experts, order additional consultative or other
examinations, or otherwise develop the record further as the ALJ
deems necessary;

d.    Reevaluate her determination at steps 4 and 5 of the sequential
evaluation, ensuring in particular that any hypothetical propounded
to a vocational expert correlates with precision to all plaintiff's
impairments which are supported by the medical and other
evidence of record, as more fully articulated herein; and

e.    Reassess the disability determination; and

3.  That plaintiff is **AWARDED** her costs to be taxed by the clerk of the court

under Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C.

§ 2412(a)(1).

Dated March 6, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge